## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

James Bender, Roy R. Hewitt,
Craig Mataczynski, John Noer, and
David Peterson,

                Plaintiffs,

    v.

Xcel Energy, Inc., in its corporate
capacity and as plan sponsor and
administrator of the Xcel Energy, Inc.
Deferred Compensation Plan,

                Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 04-3117 ADM/FLN

---

Maurice W. O'Brien, Esq., and Kelly A. Jeanetta, Esq., Miller-O'Brien, P.L.L.P., Minneapolis, MN, argued for and on behalf of Plaintiffs.

Timothy R. Thornton, Esq., Briggs & Morgan, P.A., Minneapolis, MN, argued for and on behalf of Defendant.

---

## I.  INTRODUCTION

On February 24, 2006, oral argument before the undersigned United States District Judge was heard on the cross Motions for Summary Judgment of Defendant Xcel Energy, Inc. ("Defendant" or "Xcel") [Docket No. 57] and Plaintiffs James Bender, Roy R. Hewitt, Craig Mataczynski, John Noer, and David Peterson (collectively, "Plaintiffs") [Docket No. 59].  In their Complaint [Docket No. 1], Plaintiffs allege Defendant improperly denied them benefits owed under a deferred compensation plan governed by the Employee Retirement Income Security Act ("ERISA").  Defendant's Motion is granted and Plaintiffs' Motion is denied.

## II.  BACKGROUND

On July 26, 2005, this Court issued an Order [Docket No. 50] granting in part and

denying in part Xcel's first Motion for Summary Judgment [Docket No. 21].  The Order granted

judgment for Xcel on Plaintiffs' Section 510 claims and Plaintiffs Bender and Mataczynski's

breach of contract and unjust enrichment claims, but denied Xcel's Motion on Plaintiffs' ERISA

claims.  Because the facts upon which that Order was based are largely the same as those

pertinent to the instant Motions, the factual background from the July 26, 2005 Order is

incorporated by reference, with the minor changes noted here.

The July 26, 2005 Order granted Xcel's Motion in all but two respects.  First, the Order

determined that a factual dispute existed as to whether Plaintiffs retained an exception to the

bankruptcy discharge of NRG.  The discharge states:

> EACH HOLDER OF A CLAIM (WHETHER OR NOT ALLOWED) AGAINST, OR
> EQUITY INTEREST IN, THE DEBTORS OR THE NON-NRG PLAN DEBTORS
> (INCLUDING A CLAIM ARISING AFTER THE PETITION DATE THROUGH THE
> EFFECTIVE DATE OF THE NRG PLAN), AND EACH ENTITY PARTICIPATING
> IN EXCHANGES AND DISTRIBUTIONS UNDER OR PURSUANT TO THE NRG
> PLAN, AND EACH ENTITY AFFIRMATIVELY MAKING THE RELEASE
> ELECTION FOR ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS,
> TRANSFEREES, CURRENT AND FORMER OFFICERS, DIRECTORS, AGENTS
> AND EMPLOYEES, IN EACH CASE IN THEIR CAPACITY AS SUCH, SHALL BE
> DEEMED TO HAVE RELEASED ANY AND ALL OF THE NRG RELEASED
> CAUSES OF ACTION AND SEPARATE BANK CLAIMS AGAINST THE
> RELEASED PARTIES.

Basting Aff. [Docket No. 24] Ex. O at 35-36.  The discharge excluded, however, "any claims

against Xcel under . . . the Employee Matters Agreement . . . ."  Basting Aff. Ex. N.  The

Employee Matters Agreement states:

> With respect to the Xcel Energy Inc. Nonqualified Deferred Compensation Plan and the
> Xcel Energy Inc. Nonqualified Pension Plan (collectively, the "NQRPs"), NRG and Xcel
> will determine prior to the Effective Date the proportion of the obligations owing
> thereunder as of the Effective Date to individuals employed by NRG or any NRG
> Subsidiary as of the date hereof ("NRG NQRP Participants") that is legally allocable to
> Xcel by virtue of the NRG NQRP Participants' prior service with Xcel and/or Northern
> States Power Company (the "Xcel NQRP Amount").  To the extent Xcel has not

2

previously satisfied such obligation, Xcel will maintain responsibility for payment of the Xcel NQRP Amount to which the NRG NQRP Participants become entitled under the NQRPs, and NRG will have no obligation or liability for payment of such amount.

Sanford Aff. [Docket No. 25] Ex. T.  The July 26, 2005 Order found a factual question existed as to whether this language excepted Plaintiffs' claims from the discharge, and denied summary judgment to Xcel at that time.

In addition to the discharge issue, the July 26, 2005 Order found a genuine issue of material fact existed as to whether Defendant abused its discretion in denying Plaintiffs ERISA benefits.  The issue centers on a series of restatements to the Top Hat Plan (the "Plan"), a plan designed to compensate high-level executives.  The July 26, 2005 Order determined that the Plan was restated in 1992, 2000, and 2002.

> There is no dispute between the parties that the 2002 Plan Statement does not require payment of benefits to Plaintiffs.  However, whether the 2000 Plan Statement requires such payment is contested.  If the 2000 Plan Statement does require payment to Plaintiffs, it must be determined whether the retroactive application of the 2002 Plan Statement was a procedural irregularity.  On the other hand, if it can be determined that Defendant did not abuse its discretion in determining that Plaintiffs should be denied payment under the 2000 Plan Statement, then Plaintiffs' argument that Defendant wrongly applied the 2002 Plan Statement retroactively need not be reached.

July 26, 2005 Order at 10.  Specifically, the issue of fact identified was whether the 2002 Plan Statement should be retroactively applied, and, if not, whether Xcel's interpretation of the 2000 Plan Statement was an abuse of discretion.  Id. at 12.

Since the issuance of the July 26, 2005 Order, discovery explored these issues, and all parties have now filed cross motions for summary judgment.

# III. DISCUSSION

## A.      Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## B.      Bankruptcy Discharge

A fact issue remained at the time of the July 26, 2005 Order as to whether Plaintiffs' claims were discharged in the NRG bankruptcy.  Xcel now focuses its argument on the following language from § 3.01 of the Employee Matters Agreement: "To the extent Xcel has not previously satisfied such obligation, Xcel will maintain responsibility for payment of the Xcel NQRP Amount . . . ."  Sanford Aff. Ex. T.  Xcel argues that discovery revealed that Xcel had, indeed, "previously satisfied such obligation" when Plaintiffs transferred their employment to

NRG.  Xcel cites evidence demonstrating that when the Plaintiffs[1] transferred their employment

from NSP to NRG, NSP transferred the deferred compensation balances for each Plaintiff to

NRG.  Shoemaker Dep. (Wilson Aff. [Docket No. 66] Ex. A) at 41-42; Newcomb Dep. (Wilson

Aff. Ex. B) at 11-12, 19; Weatherby Aff. [Docket No. 69] at ¶¶ 3, 4, Ex. A; Vopat Aff. [Docket

No. 68] at ¶ 2.  These transfers are reflected in the record by cash payments.  Weatherby Aff. at

¶¶ 3, 4, Ex. A; Vopat Aff. at ¶ 2.  Consequently, according to Xcel, NSP (later Xcel) satisfied its

obligations to Plaintiffs upon transfer of the deferred compensation benefits to NRG, thereby

relieving Xcel of any responsibility to now compensate Plaintiffs under the Employee Matters

Agreement.

In response, Plaintiffs argue that they were not creditors of NRG, and therefore, were not

subject to the bankruptcy discharge, which only released creditors.  Basting Aff. Ex. N.  In

support of this contention, Plaintiffs note that they settled their claims against NRG prior to the

bankruptcy discharge – therefore, they were not creditors of NRG.  Compl. ¶ 12.  This argument

is unavailing, however, because Plaintiffs' settlement with NRG was potentially subject to a set

aside in bankruptcy, which is acknowledged by the settlement itself.  Basting Aff. Ex. C at § 10.

Therefore, the settlement itself is in fact a contingent claim, which, under bankruptcy law,

qualifies as a claim.  11 U.S.C. § 101(5); see also In re Dunes Hotel Assocs., No. C/A 94-75715,

1997 WL 33344253, at *13 (Bankr. D.S.C. Sept. 26, 1997); aff'd, 245 B.R. 492 (D.S.C. 2000).

Because Xcel had previously satisfied its obligations to Plaintiffs when Plaintiffs

transferred their employment to NRG, Plaintiffs' claims do not fall within the exception to

---

[1] Plaintiff Bender never worked for NSP and is the exception.  Bender, having never
worked for NSP, can not now claim that a portion of his deferred compensation is NSP's
responsibility.

NRG's bankruptcy discharge.  On this basis, Xcel's Motion is granted and Plaintiffs' Motion is denied.

**C.     ERISA Claim**

Even if Plaintiffs could demonstrate that their claims survived the NRG bankruptcy discharge, they can not demonstrate that Xcel abused its discretion in denying them benefits.  An ERISA benefit plan that confers discretion upon an administrator or fiduciary to interpret plan documents and make decisions denying benefits under the terms of the plan is reviewed by applying the abuse of discretion standard.  <u>Fletcher-Merrit v. NorAm Energy Corp.</u>, 250 F.3d 1174, 1179 (8th Cir. 2001).  Here, Plaintiffs argue that their claims should be subject to a de novo standard of review.  In <u>Woo v. Deluxe Corp.</u>, the Eighth Circuit held that if a plaintiff can present "material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's duty," it is appropriate for a court to analyze plaintiff's claim on a "sliding scale."  144 F.3d 1157, 1160 (8th Cir. 1998).  Plaintiffs contend that Xcel inappropriately applied the 2002 Plan Statement retroactively, resulting in both a financial conflict and a procedural irregularity.

In its first Motion for Summary Judgment, both parties agreed that the Top Hat Plan, under which Plaintiffs seek benefits, was established in 1980 and was later revised three times by the 1992, 2000, and 2002 Plan Statements.  Now, however, Xcel argues that the Top Hat plan was not modified by the 2000 Plan Statement.  Instead, Xcel avers the 2000 Plan Statement was

an entirely separate deferred compensation plan created exclusively for NSP executives.[2]
Newcomb Dep. at 30.  Therefore, because all of the Plaintiffs worked for NRG at the time the
2000 Plan Statement was put into effect, they were not covered by that specific plan.  Compl.
¶¶ 6-9; Newcomb Aff. [Docket No. 67] ¶ 2.  The 2000 Statement was, according to Xcel, a plan
designed to provide parity between NSP and NCE executives as the merger of the two
companies approached.  Newcomb Aff. ¶¶ 3, 4.  Xcel notes that the title page of the 2000
Statement states that it is "First Effective January 1, 2000," as does § 1.1.  Sanford Aff. Ex. B.
The 2000 Plan Statement was later, along with many other plans, rolled into the 2002 Plan
Statement, which combined numerous plans.  Newcomb Aff. ¶ 5.

Although Plaintiffs are frustrated with Xcel's change in position, they do not present
evidence to contradict Xcel's contention that the 2000 Plan Statement was not intended to apply
to the Plaintiffs.  Much of Plaintiffs' argument relies on Xcel's position in its first Motion for
Summary Judgment that the 2000 Plan Statement was a restatement of the Top Hat Plan, as
opposed to a new, separate plan.  Xcel has admitted this error, however, and Plaintiffs present no
authority that Xcel is bound to the arguments made in their first Motion for Summary Judgment.
The July 26, 2005 Order did not rely on Xcel's representations regarding the 2000 Plan
Statement in making a detrimental determination to Plaintiffs; in fact, Xcel's Motion was denied
in part on the grounds that it was not clear whether the 2000 Plan Statement or 2002 Plan

---

[2] In its briefs and at oral argument, Xcel's counsel conceded that Xcel was in error not to
previously raise this point.  Xcel's counsel's explanation was that at that early point in the
litigation, Parker Newcomb, former Vice President of Total Compensation for Xcel during the
formation of the 2000 Statement, had not yet been consulted.  Instead, Xcel had relied on
individuals who were not at Xcel in 2000, and were not aware of the intricacies of the 2000 Plan
Statement.

Statement applied.[3]  The Plaintiffs also cite language from the 2002 Plan Statement as evidence

that the 2000 Plan Statement was a restatement of the 1992 Plan Statement.

> Effective January 18, 1980, Northern States Power Company (NSP) established the MSP
> Deferred Compensation Plan.  That Plan was restated as amended through January 1,
> 1991 (The "NSP 1992 Plan"). . . .Effective January 1, 2000, NSP established this Plan,
> the NSP Nonqualified Deferred Compensation Plan (2000 Statement).

Sanford Aff. Ex. C.  Although Plaintiffs cite this history of plans to support their argument that

the 2000 Plan Statement was simply an amendment of the 1992 Plan Statement, it is stronger

evidence that the 2000 Plan Statement was, in fact, a distinct plan first created in 2000, noting

that "Effective January 1, 2000, NSP established [the 2000 Plan Statement.]"  Because Xcel has

presented undisputed evidence that the 2000 Plan Statement was a separate plan not in existence

prior to January 1, 2000, by which time all Plaintiffs were employed by NRG, the 2000 Plan

Statement will not be considered in determining whether Xcel abused its discretion in denying

Plaintiffs ERISA plan benefits.

Having determined that the 2000 Plan Statement does not apply to Plaintiffs, whether

Xcel was correct in applying the 2002 Plan Statement as opposed to the 1992 Plan Statement is

not determinative, as the relevant language in both plans is virtually the same.  The 2002

Statement provides that "Payments shall be made only by the Participating Employer which last

employed the Participant before payments commence."  2002 Plan Statement at § 5.9.  This

language matches § 2 of the 1992 Plan Statement.  Sanford Aff. Ex. A.

Thus, under either Plan Statement, Plaintiffs must look to the participating employer

which last employed them for payment, which was NRG.  Consequently, Xcel is not responsible

---

[3] This situation illustrates the danger of filing summary judgment motions prior to
relevant discovery.

for said payments, and Xcel did not abuse its discretion in denying Plaintiffs ERISA benefits.

Xcel's Motion is therefore granted and Plaintiffs' Motion is denied.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.   Defendant Xcel Energy, Inc.'s Motion for Summary Judgment [Docket No. 57] is

**GRANTED**; and

2.   Plaintiffs James Bender, Roy R. Hewitt, Craig Mataczynski, John Noer, and David

Peterson's Motion for Summary Judgment [Docket No. 59] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  May 17, 2006.