**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

James Bender, Roy R. Hewitt,
Craig Mataczynski, John Noer,
and David Peterson,

                Plaintiffs,

     v.

Xcel Energy, Inc., in its corporate
capacity and as plan sponsor and
administrator of the Xcel Energy,
Inc., Deferred Compensation Plan,

                Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 04-3117 ADM/FLN

_____

M. William O'Brien and Kelly A. Jeanetta, Miller O'Brien Cummins, PLLP, Minneapolis, MN, argued on behalf of Plaintiffs.

Timothy R. Thornton, Esq., Briggs & Morgan, P.A., and Daniel A. R. Shoemaker, Esq., Xcel Energy, Inc., argued on behalf of Defendant.

_____

## I. INTRODUCTION

On February 26, 2008, the undersigned United States District Judge heard oral argument on Defendant Xcel Energy, Inc.'s ("Xcel") Motion For an Award of Attorneys' Fees [Docket No. 101]. For the reasons set forth below, Xcel's Motion is denied.

## II. BACKGROUND

The factual and procedural background of this matter is thoroughly set forth in the Eighth Circuit's opinion in <u>Bender v. Xcel Energy, Inc.</u>, 507 F.3d 1161 (8th Cir. 2007), and in this Court's May 17, 2006, Order (the "Second Summary Judgment Order") [Docket No. 84] granting Xcel's Second Motion for Summary Judgment [Docket No. 57]. Therefore, an abbreviated recitation of the facts is provided here.

Plaintiffs James Bender ("Bender"), Roy R. Hewitt ("Hewitt"), Craig Mataczynski ("Mataczynski"), John Noer ("Noer"), and David Peterson ("Peterson") (collectively referred to as "Plaintiffs") are former senior officers of NRG Energy Inc. ("NRG").  Prior to June 2000, NRG was a wholly owned subsidiary of Northern States Power Company ("NSP").  All Plaintiffs except Bender worked for NSP for several years before beginning employment at NRG at various times between 1989 and 2000.  Bender began his employment with NRG in 1994.  In June 2000, NSP spun off NRG in an initial public offering.  NSP retained approximately seventy-four percent of the outstanding shares of NRG.  In August 2000, NSP merged with New Century Energies, Inc., to form Xcel.

Following turmoil in the energy market in 2001 and 2002, NRG experienced severe financial difficulties.  In May 2002, Xcel bailed out NRG by purchasing the publicly held stock and merging NRG with a wholly-owned Xcel subsidiary.  In June 2002, NRG terminated Plaintiffs' employment.  When Plaintiffs did not receive their severance benefits, they forced NRG into involuntary bankruptcy.  The proceeding was resolved when Plaintiffs agreed to accept half their severance benefits.  On November 24, 2003, a bankruptcy judge in a second bankruptcy proceeding issued an order confirming NRG's bankruptcy plan under Chapter 11 of the Bankruptcy Code.  The confirmation order released Xcel from certain claims except for "any claims against Xcel . . . under the Employee Matters Agreement."  Basting Aff. [Docket No. 24] Ex. N at Ex. F.  The Employee Matters Agreement provided that Xcel would maintain responsibility for payment of certain amounts to NRG employees under the Xcel Nonqualified Deferred Compensation Plan and the Xcel Nonqualified Pension Plan (collectively, the "NQRPs") that were legally allocable to Xcel because of an individual's prior service with Xcel

or NSP (such individuals are the "NRG NQRP Participants").  Sanford Aff. [Docket No. 25]
Ex. T.

Plaintiffs continued to pursue benefits from Xcel.  In July 2004, after exhausting their
administrative remedies, Plaintiffs filed this action under the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a) and 1140.  Plaintiffs alleged that Xcel
denied benefits due to them under the NSP Deferred Compensation Plan (the "Top Hat Plan")
and that Xcel interfered with Plaintiffs' exercise of their ERISA rights.  Bender and Mataczynski
also claimed Xcel owed them stock benefits under a separate severance plan.  Plaintiffs alleged
that during the administrative appeals process, they requested that Xcel provide copies of
documents applicable to the Top Hat Plan.  Compl. ¶ 29.  Plaintiffs asserted that Xcel provided
copies of the following documents: (1) NSP's Deferred Compensation Plan, restated as amended
through January 1, 1992 (the "1992 Restatement"); (2) NSP's Nonqualified Deferred
Compensation Plan, first effective January 1, 2000 (the "2000 Statement"); and (3) Xcel's
Nonqualified Deferred Compensation Plan, as restated effective January 1, 2002 (the "2002
Restatement").  Compl. ¶¶ 30-31, Exs. A1-A2.  The 2002 Restatement was dated January 6,
2003, after NRG had terminated Plaintiffs' employment.  Compl. Ex. A1.  Plaintiffs attached
copies of the 1992 Restatement, the 2000 Statement, and the 2002 Restatement as Exhibits A1
and A2 to their Complaint.  In its Answer, Xcel admitted that Exhibits A1 and A2 "are copies of
the Plan documents."  Answer [Docket No. 7] ¶ 21; Am. Answer [Docket No. 30] ¶ 21.

On November 15, 2004, Magistrate Judge Jonathan G. Lebedoff,[1] issued a Pretrial
Scheduling Order [Docket No. 16] establishing November 1, 2005, as the deadline for discovery.

---

[1] Judge Lebedoff retired from the bench in September 2005.

On January 18, 2005, more than nine months before the discovery deadline, Xcel filed its First

Motion for Summary Judgment [Docket No. 21].  The main issue raised by Xcel's First Motion

for Summary Judgment was whether NRG or Xcel was responsible if any payments were owed

to Plaintiffs.

In support of its motion, Xcel submitted the affidavit of Kelly Sanford ("Sanford"),

Xcel's director of compensation.  Sanford explained that because some matters referenced in his

Affidavit predated his employment with Xcel, which began on March 11, 2002, his statements

were "based on personal knowledge, reasonable inquiry, or review of documents."  Sanford Aff.

¶ 1.  Significantly, Sanford stated that the Top Hat Plan was established in 1980, and was revised

three times by the 1992 Restatement, the 2000 Statement, and the 2002 Restatement.  Id. ¶ 11.

In opposing Xcel's First Motion for Summary Judgment, Plaintiffs relied on language in

the 2000 Statement that arguably allowed them to recover deferred compensation benefits from

Xcel.  Plaintiffs contended that Xcel could not retroactively apply the 2002 Restatement, which

was created after Plaintiffs' discharge.  The parties agreed that if the 2002 Restatement applied,

Plaintiffs could not recover the disputed benefits from Xcel.

On July 26, 2005, this Court issued an Order (the "First Summary Judgment Order")

[Docket No. 50] granting Xcel's First Motion for Summary Judgment on all claims except

Plaintiffs' ERISA denial-of-benefits claim.  The Court concluded there was a genuine issue of

material fact regarding whether the bankruptcy discharge barred Plaintiffs' claims because

Plaintiffs, with the exception of Bender, appeared to qualify as NRG NQRP Participants who

may still be owed money by Xcel.

After the completion of discovery, Xcel filed a Second Motion for Summary Judgment.

Plaintiffs also filed a Motion for Summary Judgment [Docket No. 59].  On May 17, 2006, this

Court granted Xcel's Second Motion for Summary Judgment and denied Plaintiffs' Motion

based on evidence and arguments that were not raised when the Court denied in part Xcel's First

Motion for Summary Judgment.  In particular, Xcel presented indisputable evidence that when

Plaintiffs transferred their employment from NSP to NRG, NSP transferred the deferred

compensation balances and made payments for each Plaintiff to NRG.  Based on this evidence,

Plaintiffs' claims were barred by the bankruptcy discharge because they were not NRG NQRP

Participants who were owed money by Xcel.

In the alternative, the Court held that Plaintiffs' ERISA denial-of-benefits claim failed

because the governing Top Hat Plan documents demonstrated that Plaintiffs could not recover

benefits from Xcel.  This holding was based in part on the affidavit and deposition testimony of

Parker Newcomb ("Newcomb"), who was a senior attorney for NSP when the 2000 Statement

was created.  Newcomb testified that, contrary to the statements in the Sanford Affidavit, the

2000 Statement created a stand-alone plan that covered individuals who were NSP employees

from January 2000 to January 2002.  Because Plaintiffs were NRG employees during that time

period, they were not participants in the 2000 Statement.  Additionally, Xcel for the first time

argued that the clear language of the 2000 Statement demonstrated that the 2000 Statement

created a new plan, and did not restate any other pre-existing plan.  Based on Newcomb's

testimony and the language of the 2000 Statement, Plaintiffs were not covered by the 2000

statement.  Thus, either the 1992 Restatement or the 2002 Restatement applied to Plaintiffs'

claims for benefits.  Because neither the 1992 Restatement nor the 2002 Restatement allowed

Plaintiffs to recover benefits from Xcel, the Court granted Xcel's Second Motion for Summary

Judgment on this alternative basis.

On appeal, the Eighth Circuit affirmed the First and Second Summary Judgment Orders. The Court ruled: (1) the 2000 Statement was a stand-alone plan that did not apply to Plaintiffs, and (2) Plaintiffs could not recover from Xcel under the 1992 Restatement or the 2002 Restatement. <u>Bender</u>, 507 F.3d at 1169-70. The appellate panel did not consider this Court's holding that the bankruptcy discharge barred Plaintiffs' claims. <u>Id.</u> at 1170.

## III. DISCUSSION

Under the "'American Rule'. . . each party normally bears the cost of the litigation unless Congress provides otherwise . . . ." <u>Martin v. Blue Cross and Blue Shield</u>, 299 F.3d 966, 971 (8th Cir. 2002). Section 502(g)(1) of ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Eighth Circuit in <u>Lawrence v. Westerhaus</u>, 749 F.2d 494 (8th Cir. 1984), held that in exercising its discretion, a court should consider the following factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

<u>Id.</u> at 495-96 (<u>quoting</u> <u>Iron Workers Local No. 272 v. Bowen</u>, 624 F.2d 1255, 1266 (5th Cir. 1980)). The Seventh Circuit, which applies the same factors, has held that a party is culpable for the purpose of ERISA § 502(g)(1) if the party's position was not "substantially justified." <u>Bittner v. Sadoff & Rudoy Indus.</u>, 728 F.2d 820, 831 (7th Cir. 1984). To be substantially

6

justified, a claim must be "something more than nonfrivolous, but something less than
meritorious—and taken in good faith." Stark v. PPM Am., Inc., 354 F.3d 666, 673 (7th Cir.
2004).

In the instant case, the analysis of the first and fifth Westerhaus factors is similar and
therefore they will be considered together.  Xcel argues Plaintiffs acted culpably and in bad faith
because they advanced frivolous arguments to prolong this litigation.  Xcel asserts that
"[Plaintiffs] knowingly plied admitted errors gleaned from Sanford's affidavit to concoct a
'retroactive amendment/procedural irregularity' myth around the 2000 Statement" and
"[Plaintiffs] persisted in this complete and utter fiction after the undisputed facts about plan
history were revealed in discovery."  Xcel's Mem. in Supp. of Mot. for Attorneys' Fees [Docket
No. 110].

Certainly a litigant should not knowingly take advantage of a mistaken admission by
another litigant.  Therefore, if the record provided a solid basis for finding that Plaintiffs or their
counsel knew that Plaintiffs were not covered by the 2000 Statement, then an attorneys' fees
award would be appropriate.  However, the record does not support such a finding.  Plaintiffs
alleged in their Complaint that during the administrative appeals process, Xcel provided the 2000
Statement and other documents in response to Plaintiffs' request for the applicable plan
documents.  Thus, even before this litigation began, Plaintiffs had grounds to believe that the
2000 Statement applied.  In its Answer to the Complaint, Xcel again admitted the 2000
Statement was one of the applicable Top Hat Plan documents.  Finally, the Sanford Affidavit
stated that the 2000 Statement was a restatement of the applicable Top Hat Plan.  Based on
Xcel's repeated admissions that the 2000 Statement was part of the applicable Top Hat Plan, this

Court cannot find that Plaintiffs are culpable for invoking the 2000 Statement.

Xcel argues Plaintiffs are culpable because they must have known they were not participants in the stand-alone plan documented by the 2000 Statement.  However, although a careful reading of the 2000 Statement reveals that it created a stand-alone plan, Sanford's Affidavit, which Xcel's counsel presumably reviewed, reached the contrary conclusion that the 2000 Statement was part of the Top Hat Plan applicable to Plaintiffs.  If Sanford and Xcel's counsel mistakenly determined that the 2000 Statement was applicable to Plaintiffs, then it is plausible that Plaintiffs and their counsel made the same mistake when Xcel provided the document to Plaintiffs and erroneously admitted it was a revision of the Top Hat Plan.

Xcel also argues Plaintiffs argued in bad faith that the bankruptcy discharge did not bar their claims.  In the First Summary Judgment Order, this Court determined that an exception to the bankruptcy discharge could apply because there was a genuine issue of material fact regarding whether Plaintiffs were NRG NQRP Participants who were owed money by Xcel. Although Xcel subsequently submitted accounting records demonstrating that it had satisfied those obligations, the Court finds that Plaintiffs were not culpable for making Xcel prove its assertion that the obligations were satisfied.  Moreover, Xcel offers no explanation for its failure to provide the accounting records in support of its First Motion for Summary Judgment.

Xcel also contends that even if Plaintiffs were not culpable when this litigation began, Plaintiffs should not have pursued an appeal after this Court made its alternative summary judgment holdings.  Although Plaintiffs' appeal was weak, this Court does not find that Plaintiffs were culpable or exhibited bad faith for taking the appeal.

The lack of evidence of Plaintiffs' bad faith or culpability, and the fact that Xcel's

mistakes contributed to prolonging this litigation by giving Plaintiffs reason to believe that the 2000 Statement applied, weigh against awarding attorneys' fees to Xcel under the first and last Westerhaus factors.

Plaintiffs do not dispute that they are able to pay Xcel's requested attorneys' fees. Therefore, the second Westerhaus factor weighs in favor of awarding attorneys' fees.

The third Westerhaus factor is deterrence. Xcel argues that an attorneys' fees award would deter other corporate executives from bringing frivolous ERISA lawsuits. However, given the unique facts of this case, particularly Xcel's mistakes regarding the applicability of the 2000 Statement, the Court finds that Plaintiffs' claims were substantially justified. Therefore, it is unnecessary to deter conduct similar to Plaintiffs'.

The fourth Westerhaus factor is whether the party requesting attorneys' fees sought to benefit all participants of an ERISA plan or to resolve a significant legal question. Xcel does not argue that it sought to benefit all participants of an ERISA plan or to resolve a significant legal question. Instead, Xcel focuses on Plaintiffs, arguing they brought this suit solely for their own benefit. In response, Plaintiffs argue the fourth Westerhaus factor is neutral because it is "primarily relevant only to whether plaintiffs should be awarded attorneys' fees." Marquardt v. N. Am. Car Corp., 652 F.2d 715, 721 (7th Cir. 1981). The Court finds that the Fourth Westerhaus factor has no effect on the attorneys' fees analysis in this case.

After reviewing the record in light of the Westerhaus factors, the Court denies Xcel's Motion for Attorneys' Fees. Although this litigation has shown that Plaintiffs' claims were without merit, Xcel's discovery positions may have misled Plaintiffs into believing their claims were substantially justified. On this record, the parties should pay their own attorneys' fees.

**IV. CONCLUSION**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendant Xcel Energy, Inc.'s Motion For an Award of Attorneys'

Fees [Docket No. 101] is **DENIED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  May 12, 2008.